Bernard Ryan, P. J.
These claims are brought to recover from the State of New York the value of 2.206 acres of land situate in the Village of North Hills, Town of North Hempstead, County of Nassau, appropriated by the State by a map filed in the office of the County Clerk of Nassau County on May 3, 1954. Each of the several parties claimant owned a one-fourth interest in the 2.206 acres. Although none of these tenants in common was ever served with a copy of the appropriation map, except that as late as October 28, 1959 the committee of the incompetent tenant was so served, apparently each learned in some way that the State of New York had possessed itself of his land because each filed his claim on May 2, 1956. The intent may have been thus to meet the two-year Statute of Limitations. But, as it has not been shown that personal service could not be made within the State, it would appear that the statute has not yet begun to run against three of the claimants.
There has been a long delay in bringing the issues to final adjudication, apparently due to a family dispute. It certainly was not due to any inaction on the part of this court, which found it necessary to prod the litigants to come in and adjudicate *988 the matter. When they finally did so it developed that a meeting of the minds had come about between the State of New York, represented by the Attorney-General and by employees of the Department of Public Works, and three of the claimants, each represented by his respective attorney. However, no written agreements of adjustment had been executed by the said three parties and by the Superintendent of Public Works, as could have been done under his statutory authority. The fourth party had declined to adopt the proposed figure or to accept a one-fourth portion thereof in satisfaction of his interest in the lands taken.
Thus the matter comes before the court, the Attorney-General and three of the claimants asking us to approve the compromise fig*ure upon which their minds have met and the fourth claimant insisting that the per acre value of the land acquired by the State is much higher than that acceptable to his brothers and sisters. Accordingly, he and they have had their day in court and an opportunity to present testimony, by means of expert opinion, and otherwise, on the issue of the land value to be determined and the several awards to be made herein. The resulting trial has supplied the court with information as to sales of other property, in the area where the Grace holdings were situated, which must be considered as comparable. And, because the issue of value is now squarely before this court, we find it necessary to review the testimony before deciding to approve the compromise figure; to reject it; to give more; or to award less.
In the first place, it was stated by counsel on behalf of the claimants Joseph P. Grace, Jr., and Charles MacDonald Grace and Janet Maureen Grace, an incompetent person, that the basis of the settlement with the State was the award of this court in the claim of Irene Gatlin Allen, Claim No. 34196. In this the Attorney-General concurred. A witness called by claimants’ counsel had already expressed his opinion that the value of the 2.206 acres was $9,825 at the rate of $4,455 per acre. The identical figure was used by the witness Myers E. Baker. Mr. Baker is an appraiser long employed by the Attorney-General and one who has testified on behalf of the defendant State of New York on repeated occasions where Nassau County property was the subject of the claim. Because the figure of $4,455 was presented as being derived from our award in the claim of Allen No. 34196 we have taken judicial notice of our decision therein, and have examined it. The total award was in the amount of $86,300 of which $12,500 was the stipulated value of the enhancement of the land by a dwelling house which was consumed in the highway taking. This leaves $74,300 for the land. There *989 was a fee taking of 15.924 acres and a permanent easement of 0.924 acres was acquired. Assuming that we divide $74,300 by either the first figure or by the sum of the two, simple arithmetic does not result in a quotient of $4,455. But even the lesser figure which does result is not an accurate reflection of our valuation. Actually that was on the basis of $4,200 or $70,761.60 for the acreage. To this we added for consequential damage to the remainder of the Allen property the sum of approximately $3,500, rounded out to make the total of $74,300.
Mr. Edwards testified that he based his opinion on sales of comparable property in the immediate area. When cross-examined about other sales we find that those he took into consideration had a wide range, viz., one on October 22, 1953, $3,184; one on May 11, 1955, $4,107; one on February 15, 1957, $5,034. He also considered a sale of October 30, 1946, at the rate of $4,000 an acre and he knew about one at the rate of $11,000 an acre on April 14, 1958 and another at the rate of $12,500 an acre for which he did not give the date.
Mr. Baker likewise considered certain sales: one on October 22, 1953, $3,164; one on March 15, 1956, $3,150; two on April 25, 1956, one at $3,200 and one at $3,600; one on February 15, 1957 at $3,000. Testifying upon the trial of these claims in March, 1961 Mr. Baker may have forgotten that in January, 1959 his opinion of the value of the Allen property was $3,600 an acre — a figure much more in line with those sales hereinabove recited which occurred within a reasonable time range of May 3, 1954.
Other opinions were given upon the trial at the instance of the claimant, Michael Grace II, who requests the court to find that the fair and reasonable value of the property was at the rate of $7,500 per acre. In support of this figure he cites the testimony of one George P. Ames who testified that he knew of an offer once made to the Grace heirs for their holdings which was at the rate of $4,000. He further testified that he had found a record of one sale of property in the neighborhood which he analyzed at $17,000 an acre. That sale had occurred on June 25,1956.
It is clear from all of the testimony that values in North Hills have been rising; that in 1956 they were higher than in 1954. In this instance the court is bound by the date of the appropriation which was May 3, 1954. It happens that the Allen taking was not until January 12, 1956. Upon all the testimony we reach the conclusion that the award herein may not, in justice, be at a rate in excess of that applied in the Allen decision. Indeed it must be at a lesser rate. The strip of land taken from Mrs. Allen’s property was along the frontage of *990 a suburban estate which was enhanced by landscaping and by a large residence (not the dwelling house for which the value of $12,000 was stipulated). The 2.206 acres involved in this claim was an unimproved parcel isolated from other holdings of the Grace heirs. The taking was entire. Furthermore, a review of the sales which we find to be comparable brings us to the conclusion that a valuation of $4,000 per acre for the land taken is fair and reasonable. Accordingly we make an award at that rate or for the sum of $8,824 for the entire fee, and direct entry of judgment on behalf of each of the four claimants herein in the amount of $2,206 with appropriate interest.