OPINION OF THE COURT
Edward J. McLaughlin, J.
Due process considerations take precedence over mere administrative convenience. The court may not entertain a petition to modify an existing support order by termination simply to accommodate the administrative needs of the support collection unit. Both of the original parties to the support order are entitled to notice and an opportunity to be heard.
Nor will the court fritter away scarce judicial resources by making redundant orders to satisfy administrative needs.[1] (See Entwistle v Entwistle, 61 AD2d 380; Barr, *751 Separate But Subservient: Court Budgeting in the American States.)
The cases now before the court were initiated by the support collection unit of Onondaga County by the filing of petitions to modify existing Family Court orders of support. In each case the support collection unit seeks to terminate orders in which child support payments were ordered by the court with payment to be made to the support bureau[2] or support collection unit, which unit in turn was to disburse the payment to the petitioner.
I. FACTS
A. CASE 1. DOCKET NO. F-616-67
On October 5, 1973 an order was made modifying a support order dated April 16, 1973. As of November 9, 1973, the respondent Raymond L. St. Denis was to pay $50 per week to the support bureau, the moneys to be disbursed to the petitioner Mary L. St. Denis. The support collection unit, on behalf of the original petitioner, requests “that current care be suspended retroactive from April 12, 1972 and arrears owed to petitioner be can-celled,” because “respondent is out of the jurisdiction of this court and both the respondent and petitioner are unlocatable.” The support collection unit signed a waiver of notice of the proceedings on behalf of the petitioner. The original order was made for the support of four children: Laurie, born August 29, 1962; Raelene, born September 20, 1963; Daurice, born December 15, 1965; and Mary Ellen, born February 14, 1966. None of these children are yet 21 years of age. (Family Ct Act, § 413.)
*752 B. CASE 2. DOCKET NO. F-691-78
On September 6, 1979, an order was signed modifying and amending an order of support dated February 20, 1979. The February 20, 1979 order was made on Docket No. F-691-78. The September 6, 1979 order was made on Docket No. F-615-77. In the February 20, 1979 order, the court ordered respondent Robert H. Smith to pay $18.75 each week for the period until the child, Kimberly, reached 21 years of age. His obligation to pay the $18.75 commenced on November 17,1978, payment to be made to the support collection unit with disbursement to the petitioner. Kimberly Smith was born on August 13, 1959. The September 6, 1979 order modified and amended this order, and ordered that commencing August 3, 1979, respondent pay petitioner Alice L. Smith $80.62 each month for support of the child, Kimberly, until she reaches the age of 21. The September 6, 1979 order also ordered that arrears of $637.25 (computed as of July 13, 1979) be paid at the rate of $69.38 each month, payments for both support and arrears to be made to the support collection unit and disbursed to the petitioner. The support collection unit now formally requests that the F-691-78 order be terminated and the arrears canceled.
C. CASE 3. DOCKET NO. F-152-75
The support collection unit also seeks to terminate this order of support. The child for whom support was ordered is now 21 years of age. The child was born on December 2, 1958. This order required that $115 per month be paid to the support bureau with disbursement to the Department of Social Services.
II. LAW
A. CASE 1
The Family Court is a court of limited jurisdiction. (NY Const, art VI, § 13; Family Ct Act, §§ 115, 422, 453; see Matter of Fish v Horn, 14 NY2d 905; Matter of Walker v Buscaglia, 71 AD2d 315, 319; Matter of Mouscardy v Mouscardy, 63 AD2d 973, 975; Matter of Borkowski v *753 Borkowski, 38 AD2d 752.) This means that unlike a court of general jurisdiction, the Family Court may only exercise its jurisdiction over specified causes of action initiated, in most instances, by a statutorily specified group of persons. (Contra, Family Ct Act, § 651.)
The support collection unit was designed to act as a conduit through which moneys were passed from the person obligated to provide child support to the person to whom the care of the child was entrusted. (Social Services Law, § 111-h.) It is empowered “to collect, account for and disburse funds paid pursuant to any order of support issued under article four, five or five-A of the family court act.” (Social Services Law, § 111-h, subd 1; emphasis added.) Thus, the social services district is statutorily mandated to provide a collection service to assist private persons in collecting their support payments. When a party fails to pay court-ordered support, the support collection unit is authorized to initiate court procedures designated to collect moneys previously ordered. (Social Services Law, § 111-h, subd 2; emphasis added.) While the statute provides methods which the support collection unit must follow if it is unable to distribute moneys collected (Social Services Law, § 111-h, subds 5, 6, 7), the statute is silent as to what, if any, action the unit is to take regarding orders of private parties that are essentially dormant.
In the legislation creating the support collection unit, the Legislature made it clear that any moneys paid into the support collection unit pursuant to an order of support where the petitioner is not a recipient of public assistance shall “be deemed for all purposes to be the property of the person for whom such money is to be paid.” (Social Services Law, § 111-h, subd 4.) The right to support belongs to the person who is entitled to seek support from a person obligated to provide such support. (Family Ct Act, § 413.) The Family Court has continuing jurisdiction over any support proceeding until the order is satisfied. The court may modify, set aside, or vacate an order of support. (Family Ct Act, § 451; Matter of Frances B. v Robert B., 66 Misc 2d 227; Fenelle v Fenelle, 183 Mise 123.) Then too, the support collection unit may file a petition to violate *754 when a respondent has failed to obey a lawful order of the court. (Family Ct Act, § 453.) The purpose of a petition to violate is to initiate a procedure whereby the court may strengthen the enforcement provisions of its order.
In Onondaga County, a computer record is kept of each support order. A file is initiated by the entry of a court order. Then all transactions that do or do not occur are entered into the computer. Thus, it is possible for large amounts of arrears to accrue on a dormant file. These arrearages may or may not be “real”, for instance, no variables are programmed into the computer to account for conditions subsequent that appear in the order or to earmark the termination of orders that expire by operation of law upon the occurrence of a particular event, such as the 21st birthday of a child for whom a support order has been made. Nor, of course, do the arrearages respond to subsequent events about which the support collection unit has no knowledge — events such as a divorce, a reconciliation, a death, or, in the case of a support order in a paternity action, a marriage. Then too, events such as the direct payment of support by the respondent to the petitioner are not included in the records found in the computer. Huge arrearages do continue to appear month after month, however, on the records of the support collection unit. Thousands of orders on which there has been no activity for long periods of time continue to be held in the computer, and, with regularity, a printout showing “arrears” is given to the support collection unit. It is not surprising that the administrators of the unit view the huge arrears with disfavor, since the numbers shown on the computer printout are large, even if inaccurate. The support collection unit, responding to the impetus of apparently huge arrears, seeks to remove inactive support orders from the computer. Administrative policy states that only a court order can close a file.
May the support collection unit file a petition to terminate a court order of support on behalf of an absent petitioner without the express consent of an original party? Here, petitioner, an employee in the support collection unit, seeks to file a petition “on behalf of’ the original petitioner. No activity has been noted in the file since 1972.
*755 In those cases where a court has terminated an order of support primarily because one or both of the parties are out of the State, one of the parties, has filed the petition (Fenelle v Fenelle, supra) or requested in writing that another person file the petition. (Matter of Frances B. v Robert B., supra.) In those cases notice was given to the other party and a hearing held on the merits.
Legal rights cannot be extinguished in order to meet the requirements of computer programmers. Even though there has been no activity on the file for some length of time, the court cannot terminate an order, absent the request of one of the parties to the order. Nor can the support collection unit waive the right to notice of such a proceeding on behalf of the parties. Both of the original parties are entitled to notice and an opportunity to be heard. Even when the order is dormant, an original petitioner may rely upon arrears collecting. (See Matter of Frances B. v Robert B., supra.) While a respondent may raise the defense of loches should the original petitioner seek a judgment pursuant to section 460 of the Family Court Act, such hypothetical possibilities are not the present concern of this court.
The function of the support collection unit is that of a fiduciary. The role of the support collection unit is not unlike the role played by the administrator of a decedent’s estate. The unit functions temporarily as an administrator of the “estate” created by the deposit with it of the support payments owed by one party to another. (See SCPA 902, 903.) If the burden of such administration becomes onerous, the support collection unit should move to be relieved of its collection responsibility, just as does the person appointed to administer a decedent’s estate if such a person is no longer able to function in that capacity. (See SCPA 715.)
While the court does not presume to tell the support collection unit how to design its computer programs, an alternative to asking for relief as the collector of support payments would be simply to not program arrears into the computer beyond the number of missed payments necessary to activate enforcement proceedings. Then arrears would not spiral upwards at alarming rates and the ad *756 ministrators of support collection units would not need to feel dragged down by what is truly a canard.
B. CASES 2 AND 3
The support collection unit also seeks to terminate two court orders which are extinguished by operation of law, one by modification of the order by a subsequent order of the court, and one by the happening of a condition subsequent, namely, the child for whom support is owed is now 21 years of age. (Even without a condition subsequent, this order would terminate upon the child’s 21st birthday by operation of law.) Unfortunately, the unit’s computer is not programmed to terminate court orders that are extinguished by operation of law. Thus, the arrears continue to be calculated on dead orders.
The support collection unit seeks formal orders terminating earlier court orders so that the accounts can be erased from the computer, which, of course, diligently continues to compute arrears on the dead orders. Since the orders already are terminated by operation of law such redundancy is unnecessary. Moreover, it is a waste of scarce judicial resources to cast the court in the role of computer programmer.
The court recognizes that the support collection unit is thrown upon the horns of a dilemma when it must assess whether or not a long-dormant order still is or is not a valid court order. In many situations events occur which extinguish a court order of which the unit has no notice. (Supra, at p 754.) Then too, a subsequent order in a matrimonial proceeding can terminate an existing Family Court order of support unless the Supreme Court continues the order of the Family Court. (Family Ct Act, § 462.) When support is referred to Family Court in a divorce decree, the plaintiff’s attorney must file a copy of the divorce decree with the Clerk of the Family Court. (Domestic Relations Law, § 251.) Since a judgment of divorce is a public record, this procedure makes it possible for a Family Court to know what Family Court support orders are extinguished and what Family Court orders continue after a divorce. This record keeping mechanism was im *757 portant at the time that the Family Court acted as a collection agent itself in that it made it possible for a court to reconcile its records and prevent wasted court time keeping account of dead orders. (Family Ct Act, § 221.)
While the court is not unsympathetic to the administrative problems of the support collection unit, the court lacks jurisdiction to grant the relief sought.
Accordingly, all three petitions of the support collection unit are dismissed on their merits.

. The totals of new petitions filed in the Family Court, State of New York, County of Onondaga, indicate that the four-Judge court is not in need of ministerial work.
*751 Total New Petitions Filed
1976 10,986
1977 11,875
1978 12,392
1979 11,007

. Prior to 1977, the support bureau performed some of the functions now allotted to the support collection unit. (Family Ct Act, § 221 et seq.)