FITZWATER v FITZWATER

Docket No. 45290. Submitted February 13, 1980, at Lansing.—Decided
April 23, 1980.

Plaintiff, Roger D. Fitzwater, and defendant, Sally M. Fitzwater,
were married in Flint, Michigan. Soon after the marriage, the
parties divided their living time between Texas and Alaska.
Four children were born of the marriage. In 1977 defendant
moved with the children to Flint, Michigan, but plaintiff hus-
band remained in Bonham, Texas, where he owned and oper-
ated a service station. In 1978, plaintiff was granted a judgment
of divorce in Fannin County, Texas. Custody of the four chil-
dren was given the wife and the husband was ordered to pay
child support. On January 29, 1979, defendant wife petitioned
the Genesee Circuit Court to amend the Texas decree so as to
increase child support and to provide a policy of health insur-
ance for the benefit of the minor children. Plaintiff was person-
ally served with process by a member of the Fannin County
Sheriff's department. Plaintiff filed a special appearance
through a Michigan attorney and moved for dismissal of the
action for lack of jurisdiction. Following hearing, the trial
court, Thomas C. Yeotis, J., ruled in plaintiff's favor. Defendant
appeals. *Held:*

A Michigan court does not have in personam jurisdiction to
modify a foreign divorce decree which awarded the wife custody
of and support for the minor children where the husband
obligor does not reside or own property in Michigan and where
the family domicile was outside Michigan.

Affirmed.

REFERENCES FOR POINTS IN HEADNOTES

[1, 2] 24 Am Jur 2d, Divorce and Separation § 999.
    Necessity of personal service within state upon nonresident spouse
    as prerequisite of court's power to modify it's decree as to child
    support in matrimonial action. 62 ALR2d 544.
[2] 23 Am Jur 2d, Desertion and Nonsupport § 138.
    Construction and application of state statutes providing for recipro-
    cal enforcement of duty to support dependents. 42 ALR2d 768.
[3] 62 Am Jur 2d, Process § 45.

1. COURTS — JURISDICTION — MODIFICATION OF JUDGMENT — DIVORCE — NONRESIDENT PARTIES.

A Michigan court does not have in personam jurisdiction to modify a foreign divorce decree which awarded the wife custody of and support for the minor children where the husband obligor does not reside or own property in Michigan and where the family domicile was outside Michigan.

2. COURTS — JURISDICTION — STATUTES — PARENT AND CHILD — NONRESIDENT PARTIES.

Neither the Family Support Act nor the Uniform Reciprocal Enforcement of Support Act grants in personam jurisdiction over a nonresident party who is not otherwise subject to the power of Michigan courts (MCL 552.451 *et seq.*, 780.151 *et seq.*; MSA 25.222[1] *et seq.*, 25.225[1] *et seq.*).

3. COURTS — JURISDICTION — IN PERSONAM JURISDICTION — NONRESIDENT PARTIES — MINIMUM CONTACTS.

Personal service out of state upon a nonresident party is sufficient to give the party fair notice of the proceeding and an opportunity for a hearing, but, in order for a Michigan court to exercise in personam jurisdiction over the party, "certain minimum contacts" between the party and the State of Michigan must be shown so that maintenance of the suit does not offend traditional notions of fair play and substantial justice.

*Sherwin F. Biesman,* for defendant.

Before: J. H. GILLIS, P.J., and ALLEN and M. J. KELLY, JJ.

ALLEN, J. Does a Michigan court have in personam jurisdiction to modify a foreign divorce decree which awarded the wife custody of and support for the minor children where the husband obligor does not reside or own property in Michigan and where the family domicile was outside Michigan? The trial court held no. We affirm.

Plaintiff and defendant were married in Flint, Michigan, December 17, 1966. Soon after the marriage, the parties divided their living time between Texas and Alaska. Four children were born of the marriage. In September 1977, defendant moved

with the children to Flint, Michigan, but plaintiff husband remained in Bonham, Texas, where he owned and operated a service station. On June 28, 1978, plaintiff was granted a judgment of divorce in Fannin County, Texas. Custody of the four children was given the wife and the husband was ordered to pay $65 per month per child in support.

On January 29, 1979, defendant wife petitioned the Genesee County Circuit Court to amend the Texas decree so as to increase child support and to provide a policy of health insurance for the benefit of the minor children. Plaintiff was personally served with process by a member of the Fannin County Sheriff's Department on February 9, 1979. Plaintiff filed a special appearance through a Michigan attorney and moved for dismissal of the action for lack of jurisdiction. Following hearing, the trial court ruled in plaintiff's favor, stating:

"I'm impressed by several things: number one, the parties by stipulation entered into a property settlement that dissolved their marriage as recently as less than a year ago, June 29, 1978.

"The defendant has since moved to Michigan from Texas. Who is to say if she's not satisfied with what happens in Michigan she could move elsewhere? I think in a sense we're encouraging 'judge shopping' or 'forum shopping' when the court with the original jurisdiction is the one that dissolved the marriage, that has the right to enforce the judgment, since the defendant does reside—or, the plaintiff does reside in Texas, and I see no particular reason this Court should get involved in this situation.

"I think it's a situation that the Court should not get involved in. I don't think we have jurisdiction, and I'm not going to accept it as such, and I deny your motion, * * *."

On May 16, 1979, an order was entered dismissing the case for lack of jurisdiction. From that order defendant appeals as of right.

The Family Support Act[1] confers subject matter jurisdiction upon circuit courts to order and enforce the payment of money by fathers for the support of minor children living with their mother, separate and away from their father. Section 1a of this act has been interpreted by this Court as allowing the circuit court to modify an original decree of support from a foreign jurisdiction upon petition from the children's mother or guardian. *Ebel v Brown,* 70 Mich App 705; 246 NW2d 379 (1976), *Amato v Sanborn,* 47 Mich App 244; 209 NW2d 429 (1973), *Gray v Gray,* 32 Mich App 466; 189 NW2d 145 (1971). However, in so ruling, it was deemed necessary that the lower court have personal jurisdiction over the husband obligor by reason of his current residency in the state.

The basis for this conclusion is found at 1 Restatement, Conflict of Laws, § 457, pp 546-547, which states:

"A state has legislative jurisdiction to impose upon one person a duty to support another person if
(a) the person to be supported is domiciled within the state and the person to support is subject to the jurisdiction of the state, or
(b) the person to support is domiciled within the state although the person to be supported is not subject to the jurisdiction of the state, or
(c) both parties are subject to the jurisdiction of the state, though neither is domiciled there."

In *Ebel, Amato* and *Gray,* both the obligor and the obligee, with her dependent children, had become permanently domiciled in Michigan at the time modification of the foreign decree of divorce and

---

[1] 1966 PA 138, as amended 1970 PA 153; MCL 552.451-552.459; MSA 25.222(1)-25.222(9), and see MCL 552.28; MSA 25.106.

child support was sought. Thus, so long as the obligor is for any reason subject to the personal jurisdiction of the state, that state can exercise its subject matter jurisdiction to modify a foreign decree of support.

Likewise, the adoption in Michigan of the Uniform Reciprocal Enforcement of Support Act *(URESA)* (1952)[2] permits Michigan courts to modify a foreign support decree or judgment where Michigan is responding to a petition brought by an initiating state for enforcement of a prior support decree. OAG 1952-1954, No. 1820, p 434, *Blue v Blue,* 243 Ga 22; 252 SE2d 452 (1979), *Alig v Alig,* 255 SE2d 494 (Va, 1979), *Ibach v Ibach,* 123 Ariz 507; 600 P2d 1370 (1979). The act does not, of course, grant in personam jurisdiction over a nonresident party not otherwise subject to the power of Michigan courts. Nor does it create new duties of support. *Martin v Coffey,* 83 Mich App 113, 115; 268 NW2d 307 (1978). Rather, its purpose is to provide by reciprocal legislation for the enforcement, across state lines, of duties of support already in existence. *Bjorgo v Bjorgo,* 402 SW2d 143 (Tex, 1966). Therefore, where no jurisdiction over the obligor husband is possessed by the circuit court, URESA cannot be relied on as granting additional powers to modify a foreign support order.

Consequently, the issue becomes whether the circuit court had in personam jurisdiction over the plaintiff obligor husband in the instant case. Although the Family Support Act and URESA might be construed as permitting our circuit courts to exercise subject matter jurisdiction over this type

---

[2] 1952 PA 8, as amended; MCL 780.151-780.174; MSA 25.225(1)-25.225(24), see Uniform Reciprocal Enforcement of Support Act, 9A, ULA 747 *et seq.*

of case, in order to do so, the court must have in personam jurisdiction over the obligor husband.

Service of process on plaintiff husband in Texas pursuant to GCR 1963, 105(1), was sufficient under *Mullane v Central Hanover Bank & Trust Co,* 339 US 306, 315; 70 S Ct 652; 94 L Ed 865 (1950), to give plaintiff fair notice of the proceedings against him and an opportunity for a hearing. *Milliken v Meyer,* 311 US 457; 61 S Ct 339; 85 L Ed 278; 132 ALR 1357 (1940). However, the exercise of in personam jurisdiction over the plaintiff husband also requires a showing that the prescribed relationship between the party and the state makes it constitutionally permissible for the state to extend its judicial power over the party. In order to constitutionally subject a party to a judgment in personam, "certain minimum contacts" within the territory of the forum must be shown so that the maintenance of the suit does not "offend 'traditional notions of fair play and substantial justice' ". *International Shoe Co v Washington,* 326 US 310, 316; 66 S Ct 154; 90 L Ed 95; 161 ALR 1057 (1945).

Following the recommendation of the Michigan Law Revision Comm (1972), 7th Annual Report, p 53, the Legislature recently amended the Michigan "long-arm" statute to enable the courts of this state to exercise limited personal jurisdiction over an individual where the individual's relationship with the state arises out of the following act:

"Maintaining a domicile in this state while subject to a marital or family relationship which is the basis of the claim for * * * child support." 1974 PA 90, § 1; MCL 600.705(7); MSA 27A.705(7).

The amendment is intended to provide a basis for personal jurisdiction when the defendant has en-

joyed a family domicile in Michigan and then abandons his dependents, leaving them as potential charges upon the public welfare resources of this state. Michigan Law Revision Comm (1972), 7th Annual Report, p 55, Nelson, *Family Support From Fugitive Fathers: A Proposed Amendment to Michigan's Long Arm Statute,* 3 Prospectus 399 (1970).

Similar provisions in other states have been upheld as providing sufficient "minimal contacts" for subjecting a fugitive parent to the personal jurisdiction of the forum state. *Dillon v Dillon,* 46 Wis 2d 659; 176 NW2d 362 (1969), *Mizner v Mizner,* 84 Nev 268; 439 P2d 679 (1968), *cert den* 393 US 847; 89 S Ct 130; 21 L Ed 2d 117 (1968), *reh den* 393 US 972; 89 S Ct 391; 21 L Ed 2d 386 (1968), *Scott v Hall,* 203 Kan 331; 454 P2d 449 (1969), *Hines v Clendenning,* 465 P2d 460 (Okla, 1970).

However, where, by the plain words of the statute, the basis of the claim for child support does not arise out of the maintenance of a familial domicile in this state, it cannot be said that our courts have been empowered to exercise personal jurisdiction over a nonresident parent in a support proceeding.[3] The obligor husband in the case at bar was not a fugitive parent from the state of his marital domicile. *Whisenant v Whisenant,* 219

---

[3] *In personam* jurisdiction can be obtained over the fugitive parent if he is present or continues to maintain a domicile in the state at the time process is served, or if he consents to submit himself to the court's jurisdiction, MCL 600.701; MSA 27A.701. In addition, in rem or quasi-in rem jurisdiction can be used as a basis for litigating the controversy where the party, not otherwise subject to the personal jurisdiction of a Michigan court, has property situated in the state. MCL 600.751, 600.755; MSA 27A.751, 27A.755, see *Vanderbilt v Vanderbilt,* 354 US 416, 417; 77 S Ct 1360; 1 L Ed 2d 1456 (1957). None of these grounds was pleaded or relied on by defendant wife as authorizing the circuit court to exercise jurisdiction over the litigation.

Kan 387, 391-393; 548 P2d 470 (1976), *Varney v Varney,* 222 Kan 700, 701-703; 567 P2d 876 (1977), compare *Hawes v Hawes,* 130 Ill App 2d 546; 263 NE2d 625 (1970), with *Farah v Farah,* 25 Ill App 3d 481; 323 NE2d 361 (1975). While the parties may have been originally domiciled in Michigan at the commencement of their marital relationship, "soon after" they "divided their living time between Texas and Alaska". In fact, at the time of their divorce, the parties had been domiciled in Texas. Following the divorce, and defendant wife's move to Michigan with her children, plaintiff husband remained domiciled in Texas. The state in which the litigants last lived together as husband and wife and in a family relationship was, therefore, Texas. As such, plaintiff husband cannot be said to have deserted his family in Michigan, thus subjecting himself to the personal jurisdiction of Michigan courts by reason of MCL 600.705(7); MSA 27A.705(7). Anno: *Long-arm statutes: obtaining jurisdiction over nonresident parent in filiation or support proceedings,* 76 ALR3d 708.

Finally, we note that in cases involving circumstances very similar to those in the case at bar, the United States Supreme Court and the Supreme Courts of Illinois and New Jersey have held that the due process clause of the United States Constitution prohibits a state from entering a binding judgment against a nonresident obligor because the quality and nature of his activities in the state make it unreasonable and unfair to require him to conduct his defense in that state. *Kulko v Superior Court of California,* 436 US 84; 98 S Ct 1690; 56 L Ed 2d 132 (1978), *Boyer v Boyer,* 73 Ill 2d 331; 22 Ill Dec 747; 383 NE2d 223 (1978), *Landis v Kolsky,* 81 NJ 430; 409 A2d 276 (1979). The obligee wife's remedy in such a case is

to litigate her claim by invoking the uniform Reciprocal Enforcement of Support Act. *Kulko, supra,* 98-100, *Boyer, supra,* 227.[4]

Accordingly, the trial judge did not err in dismissing defendant wife's petition for increased child support on the ground that the court lacked personal jurisdiction over the plaintiff husband.

Affirmed.

---

[4] Under URESA, the obligee need not return to the state of the obligor's domicile or the state wherein the divorce and original support decree was entered in order to petition for increased child support. In order to obtain, modify, or enforce support obligations owed by a spouse in one state to a family in Michigan, the obligee need only file a petition with the circuit court in Michigan. MCL 780.160a, 780.161; MSA 25.225(10a), 25.225(11). If the court "finds that the petition sets forth facts from which it may be determined that the respondent owes a duty of support and that a court of the responding state may obtain jurisdiction of the respondent or his property", it may send a copy of the petition to the "responding state". MCL 780.162; MSA 25.225(12). This has the effect of requesting the responding state "to obtain jurisdiction of the respondent. MCL 780.163; MSA 25.225(13a). If jurisdiction is obtained, then a hearing is set in a court in the responding state at which the obligor may, if he choses, contest the claim, MCL 780.163b; MSA 25.225(13b), see *Pfueller v Pfueller,* 37 NJ Super 106; 117 A2d 30 (1955). If the responding state court finds that the obligor owes a duty of support pursuant to the laws of the state where he or she was present during the time when support was sought, MCL 780.158; MSA 25.225(8), judgment for petitioner is entered. MCL 780.164; MSA 25.225(14). If the money is collected from the obligor, it is then sent to the court in the initiating state for distribution to the initiating party. MCL 780.168; MSA 25.225(18). See generally the text and footnotes in *Kulko, supra,* 98-100, Stewart, *Domestic Relations: Interstate Enforcement of Support Orders: Necessity and Feasibility of Federal Legislation,* 48 Cornell LQ 541 (1963), and *Martin v Coffey, supra,* 115.